[J-83-2020] [MO: Mundy, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| FIREARM OWNERS AGAINST CRIME; KIM STOLFER; JOSHUA FIRST; AND HOWARD BULLOCK, | : | No. 29 MAP 2020 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated |
| Appellees | : | September 12, 2019, |
| | : | reconsideration denied October 23, |
| | : | 2019, at No. 1434 CD 2018 |
| v. | : | Affirming in Part & Reversing in Part |
| | : | the Order of the Dauphin County |
| | : | Court of Common Pleas, Civil |
| CITY OF HARRISBURG MAYOR ERIC | : | Division, dated October 9, 2018 at |
| PAPENFUSE; AND POLICE CHIEF | : | No. 2015-CV-354-EQ. |
| THOMAS CARTER, | : | |
| | : | ARGUED: December 1, 2020 |
| Appellants | : | |

**DISSENTING OPINION**

**CHIEF JUSTICE BAER**                          **DECIDED: October 20, 2021**

I respectfully dissent because I believe that the majority has expanded improperly the traditional notion of standing. In my view, Firearm Owners Against Crime ("FOAC"), Kim Stolfer, Joshua First, and Howard Bullock (collectively, "Appellees") have failed to allege facts in their complaint establishing that each challenged ordinance promulgated by the City of Harrisburg ("City") directly and immediately affects, regulates, or impairs their possession, use, or enjoyment of their firearms. Notably absent from Appellees' complaint is any allegation that they engaged in the particular conduct prohibited by the ordinances or immediately intended to do so, or that the ordinances are at all applicable to their personal circumstances. Accordingly, I would hold that Appellees have failed to establish a substantial, direct, and immediate interest sufficient to afford them standing.

As observed by the majority, this appeal involves challenges to the following four sections of the Codified Ordinances of Harrisburg ("Code"), which regulate, in some manner, the use, possession, or ownership of firearms in the City: (1) the Discharge Ordinance, Code Section 3-345.2, which restricts the discharge of firearms within the City to enumerated accredited educational facilities or approved firing ranges; (2) the Parks Ordinance, Code Section 10-301.13, which prohibits the use and possession of firearms within City parks; (3) the Minors Ordinance, Code Section 3-245.1, which renders it unlawful for unaccompanied minors to possess firearms in the City outside of their residences; and (4) the Lost/Stolen Ordinance, Code Section 3.345.4, which requires firearm owners to report lost or stolen firearms to law enforcement within 48 hours of discovery of the loss or theft.

In concluding that the averments in Appellees' complaint were sufficient to establish their standing to commence a declaratory judgment action challenging the constitutionality and statutory preemption of these ordinances, the majority relies upon the averments in the complaint establishing that Appellees lawfully possessed firearms and are licensed to carry concealed firearms; they live, commute, or travel to the City; they generally fear criminal prosecution under all the ordinances because City officials indicated in public statements that they intend to enforce some of the ordinances; and one of FOAC's members is a minor who resided in the City and lawfully possessed firearms. Majority Opinion at 32. Respectfully, contrary to the majority, I find these facts insufficient to establish that each particular ordinance substantially, directly, and immediately affects Appellees' possession, use, or enjoyment of their firearms.

As the majority observes, it is well established that, prior to judicial resolution of an action seeking declaratory and injunctive relief, a party must, as a threshold matter, demonstrate standing. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655,

659 (Pa. 2005). The traditional notion of standing focuses upon the idea that the litigant must be impacted adversely or aggrieved by the matter he seeks to challenge. *William Penn Parking Garage v. City of Pittsburgh*, 346 A.2d 269, 280-81 (Pa. 1975) (plurality). A litigant demonstrates that he or she is aggrieved by establishing a substantial, direct, and immediate interest in the outcome of the litigation. *Pittsburgh Palisades Park, LLC*, 888 A.2d at 660. This Court has clarified:

> An interest is substantial if it is an interest in the resolution of the challenge which surpasses the common interest of all citizens in procuring obedience to the law. Likewise, a direct interest mandates a showing that the matter complained of caused harm to the party's interest, *i.e.*, a causal connection between the harm and the violation of law. Finally, an interest is immediate if the causal connection is not remote or speculative.

*Id.* (internal citations and quotations omitted).

These requisites have not been satisfied here. Initially, while not dispositive of the standing determination, there is no allegation in Appellees' complaint that they have been charged or convicted of violating any of the challenged ordinances, which averment would have satisfied all three requisites for standing. More significantly, however, Appellees failed to aver that their interest in this litigation is substantial, direct, and immediate. Stated differently, Appellees have included no assertions in their complaint that they engaged in or immediately intended to engage in the particular conduct prohibited by the ordinances or that the various ordinances are even applicable to their personal circumstances.

Specifically, relating to the Discharge Ordinance, Appellees have failed to allege any facts establishing that they currently discharge their firearm within City limits outside of accredited educational facilities or approved firing ranges or that they intend to do so in the near future, and, thus, suffered direct and immediate harm from the ordinance's restrictions. In connection with the Parks Ordinance, Appellees likewise have not averred

a single fact indicating that they possess or use their firearm in City parks or have a present desire to do so. Similarly, Appellees have not pled facts establishing that their member who is under the age of 18 possesses or immediately intends to possess firearms in the City outside of his or her residence, while unaccompanied by an adult. Finally, Appellees have included no assertion in their complaint that any of them had a firearm that was lost or stolen, thereby subjecting them to the 48-hour reporting requirement established by the Lost/Stolen Ordinance, or that they would disobey the ordinance's reporting requirement if they had a lost or stolen firearm. Whether any of Appellees will lose a firearm or have a firearm stolen in the future is pure speculation; thus, there is no immediate interest that is affected by the ordinance's reporting requirement.

In sum, Appellees have made no averment that the ordinances apply to their particular circumstances in a manner so as to burden their constitutionally-protected right to bear arms.[1] I recognize that a court reviewing preliminary objections in the nature of a demurrer accepts as true all material facts pled in the complaint, as well as any reasonable inferences deducible therefrom. *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1022 (Pa. 2018). This Court may not, however, infer reasonably that Appellees engaged in the particular conduct prohibited by the four separate ordinances or immediately intended to do so, or that the ordinances are applicable to the personal circumstances of Appellees, either individually or as a group. To do so would turn standing jurisprudence on its head, as a court could always infer that the plaintiffs may engage in conduct in the future that the challenged ordinance prohibits, reasoning that, otherwise, the plaintiffs would not have filed their legal action.

---

[1] Appellees aver that they "own, possess, use and bear firearms for all lawful purposes, including, but not limited to, self-defense, hunting, firearms training/education, and target shooting." *See* Appellees' Complaint, 1/16/2015, at 18. Appellees do not, however, assert that they currently engage in the specific conduct prohibited by the challenged ordinances or that they have a present intent to do so.

Appellees' deficient pleading is not surprising, considering that when they filed their complaint on January 16, 2015, they relied upon the statutory provisions of Act 192 of 2014, which granted automatic standing to organizations such as the FOAC, who were alleged to be adversely affected by certain firearms restrictions, and, notably, defined a "[p]erson adversely affected" as including a "resident of this Commonwealth who may legally possess a firearm under Federal and State law." *See* Appellees' Complaint, 1/16/2015, at 5 (citing Subsections 6120(a.2), and (b) of the Uniform Firearms Act).[2] Thus, at the time Appellees filed their complaint, an assertion that they lawfully possessed firearms was sufficient to afford them standing to commence the instant litigation.[3]

---

[2] Act 192 of 2014 amended Section 6120 of the Uniform Firearms Act ("Limitation on the regulation of firearms and ammunition"), which sets forth in subsection (a) the general rule that "[n]o county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa.C.S. § 6120. Act 192 added to Section 6120 an automatic standing provision stating that "[a] person adversely affected by an ordinance . . . prohibited under subsection (a) . . . may seek declaratory or injunctive relief and actual damages in an appropriate court." 18 Pa.C.S. § 6120(a.2) (declared unconstitutional). Act 192 further provided the following definition:

> "Person adversely affected." Any of the following:
>
> (1) A resident of this Commonwealth who may legally possess a firearm under Federal and State law.
>
> (2) A person who otherwise has standing under the laws of this Commonwealth to bring an action under subsection (a.2).
>
> (3) A membership organization, in which a member is a person described under paragraph (1) or (2).

18 Pa.C.S. § 6120(b) (declared unconstitutional).

[3] Accordingly, in connection with the four challenged ordinances at issue in this appeal, Appellees asserted at least ten times in their complaint that "[p]ursuant to Section 6120(a.2), an actual controversy need not exist, as the General Assembly has conferred standing where a municipality either promulgates or enforces 'an ordinance, resolution, regulation, rule, practice or any other action.'" Appellees' Complaint, 1/16/2015, at 21

However, on June 25, 2015, subsequent to the filing of Appellees' complaint, the Commonwealth Court in *Leach v. Commonwealth*, 118 A.3d 1271 (Pa. Cmwlth. 2015), declared that Act 192 was unconstitutional in violation of the single-subject rule of Article III, Section 3 of the Pennsylvania Constitution. This Court affirmed the intermediate appellate court's ruling, *Commonwealth v. Leach*, 141 A.3d 426 (Pa. 2016). As Act 192 was invalidated, there is no current statutory provision affording Appellees automatic standing based solely on their status as individuals who may lawfully possess firearms. Thus, traditional concepts of standing apply.

Respectfully, regarding this provision, the majority expands improperly the well-established requisites for standing, *i.e.,* a substantial, direct, and immediate interest, to encompass the general averments set forth by Appellees. By doing so, this Court has effectively breathed new life into the now defunct Act 192 by sanctioning automatic standing to challenge any and all firearm ordinances upon a mere showing that the plaintiff may lawfully possess a firearm, without requiring a demonstration that the challenged ordinance has any substantial, direct, or immediate impact on the plaintiff's constitutionally-protected right to bear arms. This expansion of the general concept of standing could reach farther than cases challenging firearm regulations, potentially allowing citizens to challenge myriad local ordinances, at a municipalities' legal expense, without suffering the requisite harm required to commence an action.

It is beyond cavil that Appellees have constitutionally-protected rights relating to their lawful possession and use of firearms and that they must not be forced to violate the

n.3, 26 n.7, 32 n.9, 37 n.11, 40 n.12, 44 n.13, 50 n.15, 54 n.17, 74 n.22, 78 n.23. Nonetheless, Appellees alleged in their complaint that a controversy did exist, not because they engaged in conduct prohibited by the ordinances or had a present intent to do so, but because City officials had publicly stated that they intended to enforce the ordinances and had prosecuted individuals pursuant to the ordinances. *See id.* at 21, 26, 32, 37, 40, 44, 50, 54, 74, and 78.

law and subject themselves to prosecution to challenge ordinances that burden those rights. However, traditional notions of standing remain applicable, which require a demonstration that Appellees are aggrieved by the particular ordinances that they challenge, *i.e.*, that their direct interest in the outcome of the litigation surpasses the common interest of all citizens and is not remote or speculative. A mere assertion that the plaintiff is an individual who may lawfully possess a firearm in the City does not, under current jurisprudence, establish that the individual is aggrieved by any and all ordinances that purport to regulate firearms.

Respectfully, I do not believe that this Court's holding in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (Opinion Announcing the Judgment of the Court), compels a different result. In *Robinson Township*, a physician challenged those portions of a statute that restricted him from obtaining and sharing information with other physicians regarding the chemicals used in natural gas drilling operations. The physician argued that he was aggrieved by the statute because the confidentiality provisions restricting the transfer of information impeded his ability to diagnose and treat his patients. The Commonwealth Court held that the physician lacked standing until he requested confidential information on behalf of a particular patient and that request was either denied or the information disclosed was restricted in a manner so as to render the physician unable to treat his patient properly.

This Court reversed the Commonwealth Court's standing determination, finding that it placed the physician in an untenable position because it required him either to violate the statute's confidentiality provisions, violate his professional and ethical obligations to treat his patients properly, or refuse to treat patients when he feared that he would have to choose between providing patient care and violating the statute. We explained that pre-enforcement review of statutory provisions is permitted when a party

"must choose between equally unappealing options and where the third option, here, refusing to provide medical services to a patient, is equally undesirable." *Id.* at 924.

Unlike in *Robinson Township*, there is no Hobson's choice presented in this appeal; rather, merely a fatal defect in fact-pleading caused by Appellees' failure to allege sufficient facts in their complaint establishing that their constitutionally-protected right to bear arms was burdened by the particular ordinances challenged. The trial court reached this conclusion when it granted Appellants' preliminary objection in the nature of a demurrer, holding that Appellees had not plead any facts to show that they were harmed by any of the subject ordinances, and that the asserted potential harm was entirely speculative, as it may never occur. *See* Trial Court Opinion, 10/29/2019, at 4 (citing *Gulnac by Gulnac v. S. Butler Cty. Sch. Dist.*, 587 A.2d 699, 701 (Pa. 1991) (providing that a "declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic")).

In fact, the law on this particular issue, at least to the extent applicable to the Lost-Stolen Ordinance, was settled by the Commonwealth Court until reversed by that court's decision below, which the majority herein affirms. In *National Rifle Association v. City of Pittsburgh*, 999 A.2d 1256 (Pa. Cmwlth. 2010) ("*NRA/Pittsburgh*"), the Commonwealth Court dismissed for lack of standing a challenge to the City of Pittsburgh's Lost/Stolen firearm ordinance because the plaintiffs "have never violated the ordinance, do not allege that they would disobey the ordinance if one of their guns is lost or stolen, and do not allege that a gun has been lost or stolen since the ordinance has been enacted."[4] *Id.* at

---

[4] The ordinance challenged in *NRA/Pittsburgh* stated, "No person who is the owner of a firearm that is lost or stolen shall fail to report the loss or theft to an appropriate local law enforcement official within twenty-four (24) hours after the discovery of the loss or theft." *NRA/Pittsburgh*, 999 A.2d at 1258 (citing Pittsburgh City Code § 624.01). The Pittsburgh

1259. Thus, the court concluded, the possibly of harm was remote and speculative, and the plaintiffs lacked standing. *Id.* The *NRA/Pittsburgh* decision relied upon a similar case previously decided by the Commonwealth Court in *National Rifle Association v. City of Philadelphia*, 977 A.2d 78 (Pa. Cmwlth. 2009) ("*NRA/Philadelphia*"), which held that the plaintiffs lacked standing to challenge Philadelphia's ordinance requiring the reporting of lost or stolen firearms because they had not demonstrated direct and immediate harm, as the possibility that one of the plaintiffs might lose a gun in the future, fail to report it, and then be punished was remote and speculative.

In deeming Appellees' factual averments in this case to be sufficient to establish standing, the Commonwealth Court acknowledged that its decision was in direct conflict with that court's prior rulings in *NRA/Pittsburgh* and *NRA/Philadelphia*. *See FOAC v. Papenfuse*, 218 A.3d 497, 512 (Pa Cmwlth. 2019) (stating "[w]e recognize that our decision here, affording traditional standing to Individual Plaintiffs and FOAC, conflicts with our precedent in *NRA/Pittsburgh* and *NRA/Philadelphia . . .*"). The Commonwealth Court, however, found that those intermediate appellate court cases should be overruled as inconsistent with this Court's decision in *Robinson Township. FOAC,* 218 A.3d at 513. For the reasons set forth *supra*, this reasoning is unpersuasive as the circumstances in *NRA/Pittsburgh* and *NRA/Philadelphia*, like the instant case, do not force citizens to make the untenable choice of foregoing a constitutional challenge or violate the ordinance and risk criminal prosecution to afford themselves standing. Instead, they must simply allege facts sufficient to demonstrate that they were aggrieved by the particular ordinances challenged. This, Appellees failed to do.

---

ordinance punished first-time violators by a fine of up to $500, and subsequent violations by a fine of up to $1,000 and/or imprisonment of up to 90 days. *Id.*

Accordingly, I would vacate the order of the Commonwealth Court and reinstate the order of the trial court that granted Appellants' preliminary objection in the nature of a demurrer for failing to plead standing to sue.

Justices Todd and Donohue join this dissenting opinion.